Good morning. Before we begin our cases today, I'd like to turn to Judge Kleppinger for a motion. We have a very important piece of business. I move the admission of Jonathan Putman, who is a member of the Bar and Good Standing of the highest court of Washington, D.C. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. I can state the last sentence without any question to its veracity because Mr. Putman, for the last year, has served as one of my law clerks. He served with great distinction, has been a great help to me, and a great asset to the court. I hope that the majority of the panel will find itself in a position to vote favorably on my motion. You're in their hands now, John. But very fortunate because I too, through the period John has been with the court, have had the pleasure and the honor of working with him on a number of items. It's really been a pleasure and I wish you the best of luck. I'm enthusiastic about your future. I say the same and I'm very pleased to join my colleague in granting this motion. The motion is granted. Please take care. You're in their hands. You've done what's fair and right. Support yourself. Turn yourself, or others, uprightly and according to law. And then support the Constitution. Congratulations. Now I'll turn to our cases this morning. The first case is 2013-3013, Celestine Porter v. Mabee. Mr. Fisher, whenever you're ready. Thank you, Your Honors. Morris Fisher for the appellant. Your Honors, this case is about one thing, really one thing only. It is about the limits of a credibility determination by an administrative law judge. And the law does establish that there are limits to what an administrative law judge can do in rendering his opinion at an MSPB hearing. And in this case, the ALJ exceeded those limits. And the reason he did is that the case involved an issue of whether Ms. Porter, the appellant, had bruised another federal employee. The federal employee, Ms. Lau, contended that Ms. Porter had bruised her. She complained about it a week later. The record is undisputed that Ms. Lau contended that Ms. Porter had used her left arm. When did that first come up? I understand, I guess I was a little confused. I mean, I saw it in the investigator's report, right, at paragraph 7? Yes. But where in, I couldn't see it, so maybe you can tell me where. In the AJ's opinion and elsewhere in her statements, where did she testify or where did she contend, emphasize this left hand thing? The left hand thing is in her testimony. A.A. 382? 382. Yes, go ahead. Thank you, Judge. Ms. Lau said in her own testimony at hearing that Ms. Porter had used her left arm. And that did not happen. The reason it did not happen is because... You're on the phone. I'm looking at 382. I was holding the phone with my left hand. Okay, you're working with a computer. I was working on the computer. No, this is not her testimony. This is not the alleged victim's testimony, right? Okay, I'll find it in a second. Wow. Wow. 63. Ms. Porter testified that she was using the phone with her left hand and her right hand was using a computer. Yeah, but I was referring to... I mean, well, maybe you can come back with it. I mean, I don't want to take all of your time. Yeah, I remember specifically that she did say... Well, I assume that her conversation with someone, she must have alleged that. Right. I just didn't see that as being a focal point of the administrative judge, so I just didn't know whether she had testified or not. I know there is some testimony if you look at Appendix 246. Ms. Niles' testimony about where did she grab your arm, on my right arm, what portion of the arm, the upper portion. So there was some discussion there of what happened from the mouth of the... I did find it, Your Honors. It's on page 246. Question. 246 at the bottom. Ma'am, which arm did Ms. Porter use to grab your arm? Page 247, answer, her left hand. Her left hand. So I think that's a very good question. That should be the focal point of the case. But there was never any real follow-up with cross-examination as to how would that be in the physical arrangement of where you were sitting compared with where Ms. Porter was sitting, where Ms. Fowler was sitting. How could that possibly be? All of the things that you are focusing on based on the investigator's report and the investigator's conclusion, which is not evidence, it's the investigator's conclusion, doesn't appear in the transcripts. Well, Judge Lynn, first the judge specifically admitted that exhibit into evidence. So it was evidence. Number two. Well, it's the investigator's conclusion. It's not a statement of fact as to what transpired by the persons who were there.  It's not a statement of fact. But it's the only thing we have to go on. Just to get back to your other question about the cross-examination. The cross-examination is limited to the scope of the direct. The direct of government has the preponderance of the evidence here. Government has to say, has to give some sort of explanation of how this occurred. Okay, Ms. Lau, you're saying she grabbed your arm. How did she do that? You say it was with the left hand. The investigator's report finds that wasn't possible. So the government has the obligation to match that, to say in a preponderance of evidence finding what happened here. And to this day, whether it's not in the brief, it's not in a report, it's not in an opinion anywhere as to how it was. The reason why it couldn't have been is because of where they were sitting. Yeah, yeah. I don't see the investigation. We don't know whether Ms. Lau moved. I mean, there's no testimony. I mean, you have them sitting at the table, as you know, one on one side of the square and one on the other. It does look like it's difficult with the left hand to reach over and get this. But I don't know whether Ms. Lau was stationary. I don't know. Or whether she turned. I don't know what's happening physically in the physical relationship between the two people. Between the time of the telephone call and presumably putting the telephone down and then reaching with the left hand. The testimony was not that she put the phone down. Everyone agrees she was on the phone when this occurred. Now, if the phone is on the left side of the monitor, which that was established, in the testimony, so how could she have done that? Everyone agrees she was on the phone. You started by saying sort of the issue and the focal point in this case is the extent to which we rely or defer to credibility determination. That's correct. But the record in this case is the record of this administrative judge doing precisely what they do, which is listening to the testimony of all the witnesses and coming to their conclusions. So is it your view that an exception to sort of that deference is created where a report is an evidence by someone else who says that the way this allegedly turned around seems inconsistent? I don't see that he said it's impossible. He said it's inconsistent. So is it your view that it's kind of a matter of law that based on that we shouldn't defer to an AJ's credibility determination? Well, certainly not. Was there a finding here by the AJ that Ms. Porter used her left hand to inflict the supposed bruise? I didn't think so. I thought there was testimony from your client. And from Ms. Lyle, which I just read on page 247. I understand that, but I mean, isn't it possible that on that particular thing you didn't believe Ms. Lyle? I guess. I mean, I guess anything's possible. The question is not whether it's possible. The question is did the government... But if you have a situation where you've set up the paradigm this is such an easy case because it has to be that there was a flaw in the credibility determination and that your client should be believed because this testimony from Ms. Lyle proves that your client is correct. I mean, that's the paradigm I think you've set up. And I say, well, the judge down below is not a dumbbell. They can see as well what this potential problem is. And so in order to come out where the judge came out at seeing me the judge had to work through your paradigm and sub-selenio at least rule against you. Here's the thing, judges. Yes, there's a credibility finding, okay? But at the most critical moment of the event in question, okay? Not what was said later. When it happened. How did it happen? There is no credibility analysis. There's no analysis of any kind by this administrative judge. And that's what's deficient in this opinion. There's no... Well, you're asking... I mean, it's not really a completely clean slate. The judge went through the testimony of the various witnesses and analyzed it and talked about it. I mean, there's a discussion of the credibility of these witnesses and their testimony, right? And part of the credibility that we use is inherent probability or improbability of something that happened. So, I mean, that's part of the analysis. That was not done here. That's why it's... That's the reason that the opinion is deficient. I mean, let's say the appellant here said... Cuevas says... One of the witnesses says, well, she admitted. She said she used voodoo. She said she went to her office and she stuck a pin in the victim's thought. And she said, I don't know my own strength. And the judge says, yeah, it looks like... Okay, yeah, I believe that. I mean, if the thing... If it's inherently unlikely that the thing happened, isn't that the most important issue in credibility? And the judge does not address that at all in the opinion. And that's the basis here. Why don't we... You're into your rebuttal. Why don't we hear from the government? Okay, thank you. Thank you. May it please the court. Substantial evidence supports the board's determination that the agency supported its charge of misported misconduct towards a subordinate by preponderance of the evidence. Mr. Fisher has pretty much boiled it down to a single issue for us, which is for us to determine how it could be that Ms. Lau testified that this was inflicted with the left hand. What's your answer? Your Honor, it's not clear exactly the circumstances of the incident. There's nothing in the record that states specifically exactly who is sitting where, as Your Honor said earlier. We know the location where they were sitting. There's no doubt about that, correct? The table's a square. One person's on one side and one's over here. We know that from the testimony. And that testimony is uncontroverted. And we know that Ms. Porter had the phone in her left hand, correct? Ms. Porter states that she had the phone in her left hand. That's your testimony. She states that, so you take that as a fact. Okay, so then we have the allegation from Ms. Lau that the blow was inflicted with the left hand of Ms. Porter, right? We saw the testimony. Yes, Your Honor. Did you cross-examine? Did you cross-examine her on that? No, there was no cross-examination on that particular point, Your Honor. Okay, so that fact is established, right? So how could it have happened? Well, Your Honor, it's... It squeezed me and bruised me in the way that it supposedly happened. I just want you to explain to me how it happened. Well, I understand, Your Honor. I was not there. There were no eyewitnesses. I wasn't either. Yes, Your Honor. We just have the record. Yes, Your Honor, we do. And so anything is possible, as was said earlier. What Ms. Porter is basing her case on is the criminal investigation report which stated that it was inconsistent that Ms. Lau could have been injured on her right hand by Ms. Porter's left hand. But that leaves open the possibility that Ms. Porter's left hand could have incurred the bruises on Ms. Lau's arm. It's not impossible. It's not inherently improbable that that occurred. But we also have beyond that... But there's no... I mean, there's no... You didn't cross-examine. Ms. Porter didn't say, well, I got up and walked around behind her. No, Your Honor. Right? There was no cross-examination to that effect. It's not clearly established exactly the situation... Well, then I'm sure she left with the record that Mr. Fisher's hanging his hat on. I understand, Your Honor. I mean, I realize... I mean, he knows that he's got a greased pole he's trying to climb up because I don't think this Court has ever upset a credibility finding by an administrative judge at the Merit System Protection Board. But there's always a first case. Yes, Your Honor. But what Ms. Porter's attorney did not focus on is the credibility determinations are also the credibility determinations of Ms. Porter. And the administrative judge found Ms. Lau's story, her testimony, her statements to be more credible than Ms. Porter's because Ms. Lau came across as sincere and believable as a witness with no motive to fabricate. We know all that, ma'am. And there's no question about that. But what Mr. Fisher has done is to put his finger on what he views to be the Achilles heel of the assessment that Ms. Lau's credibility has to be credited. And he said it doesn't make any sense. It's like if Ms. Lau had testified that the moon is made out of cheese. And they said that undermines her credibility. But the administrative judge, Your Honor, did not find that in Ms. Porter's testimony. In reviewing Ms. Lau's testimony and Ms. Porter's testimony, he did look at her demeanor and he did witness her character. And he did find that she was more credible because she was sincere and believable. Her statement and testimony is also consistent with the statements of Ms. Porter. Well, do you think there's an implied finding of fact or an implied assessment that Ms. Lau simply was mistaken when she said that the blow was inflicted by the left hand of Ms. Porter? That could be possibly, Your Honor. That's not in the record either way. Your Honor, that's not in the record. There's not a clear statement in the record of exactly how the events occurred. But it's not required before the board for a misconduct charge that there is a requirement of clear and convincing evidence or anything. It's preponderance of the evidence. And by preponderance of the evidence that was before the administrative judge, he found Ms. Lau's testimony to be more credible. He also found that Ms. Porter offered no reason that Ms. Lau and Ms. Hart would lie when they testified that Ms. Porter had been angry during the phone conversation or why Ms. Cuevas would lie when she said that Ms. Porter admitted misconduct itself. He also viewed the photos and he saw Ms. Lau's arm and he's basing his decision on all of that information as well as the record itself. There are instances in the record, there's one in particular that was in the notice of proposed emotion in which Ms. Porter was engaged in some anger with another employee and that's in the notice of proposed emotion. Do you have any explanation as to why there was no cross-examination on this point? No, Your Honor. I do not have an explanation to that effect. The administrative judge correctly concluded that the agency established that it was more likely than not with the preponderance of the evidence that Ms. Porter engaged in the charge of misconduct and that the incident occurred before Ms. Porter was charged. How heavy is the evidence you've been talking about about the fact that he was angry and she was upset and all this? I mean, she's not charged with being, the point is she hasn't been charged with being angry. You can be angry, you and I can get angry so long as I don't hurt you. There's no foul. Well, as Mr. Scott testified in the record, this was a violent thing when Ms. Porter grabbed Ms. Lau's arm. That's a little more violent than just shaking hands with somebody. So that has a great deal to do with the demotion. They didn't remove her from office. They wanted her to stay there but they didn't want her to have the supervisory responsibilities that she had because of her relationship and what she had done with Ms. Lau. Does the testimony that's attributed to Ms. Porter that I know my own strength, et cetera, that sort of thing, does that bear at all on this question of whether the left hand could have done it? It could mean that she used her left hand or right hand. I don't quite understand your question, Your Honor. Well, what I'm trying to do is to see if there aren't any data points in the record that would help me if I wanted to go that way to conclude that the ALJ understood the force of Mr. Fisher's argument and understood the conclusion from the investigator's report but nonetheless concluded that the event could have happened. I believe, Your Honor, that that's exactly what the administrative judge did do. He did take into consideration all of the testimony that was provided and Ms. Porter's attorney could have asked more additional questions about how the incident had occurred but did not do that. Ms. Porter's attorney also is concerned that the bruises might have been caused by domestic violence and could have asked that question but failed to do so but we do know that between the time that Ms. Lau was bruised by Ms. Porter and the next day when Ms. Cuevas saw the bruises, no one touched Ms. Lau's arm and she testified to that effect as well. Ms. Porter's attorney was also attempting to determine whether or not something like skin conditions could have caused bruises but she could have asked her attorney could have asked Ms. Lau those questions but did not do that. Instead, she asked Mr. Scott, the deciding official and the deciding official testified that he's not a doctor and he would have no way of knowing that that occurred. There's simply nothing in the record that would justify the unusual step of rejecting the administrative judge's credibility determinations. For the reasons set forth in our brief and presented here today, we respectfully request that this court affirm the decision of the board below. Thank you. Your Honor, I probably will not use the full 345 in this. Can I ask you just my own edification because we talked a little about whether you cross-examined her or whatever. Ms. Lau testified as you pointed out to me that she used her left hand. Yes. You would have thought, right, that counsel for the other side would get up on cross-examination waving the criminal investigator's report and saying, you just testified it was the left hand. Well, that's not possible. Show me how that's possible. Am I wrong about that that that would be the expectation and that that never happened? Okay. First, there may be an objection for that's argumentative. That's number one. Well, see, you could ask it a different way. Just because it's argumentative, you can put the conclusion. I mean, your whole thing is predicated on the fact that this was arguably impossible or not likely to have occurred in this way with the hands. And when she testified that, you'd think that that's the opportunity to put this credibility question four square before the AJ by asking her about that. Well, there are other issues with her credibility even without that. I mean, she says that she Yeah, but that's what it seems to me you're really hanging your hat on in terms of this appeal, right? It's the most important piece of evidence. Okay. So, I'm waiting to So, would that not have been the way in a normal proceeding that that credibility question would have been before presented four square before the AJ, right? I don't know that I'd use the word normal. It's meaning there's an issue That's what cross-examination is all about. Yeah, I understand that. But the granted, that's why I asked the question earlier and I think Judge Prost is right that normally you would expect that these questions would be explored on cross-examination and that that way you would have a record with testimony that you could argue about rather than trying to hang your hat on the conclusions reached by another decider. I understand that. Granted. But the question is who had the preponderance of evidence? Not the defendant. Not the appellant. It was the government who didn't establish that story. Well, the government established facts and the ALJ then assessed all of the testimony and made the credibility determinations on that brief record without the benefit of the cross-examination and had to make a decision. It's difficult for us to overturn. It's difficult in general. That's true. But in this case where there's a finding which contradicts the basic tenets of the story, for all we know those marks happened a week ago. You don't know what happened that day. Who's to say that? She waited a week to complain. She said that each of the squeezes was 30 seconds to a minute. She didn't complain. She didn't yell. She didn't scream. She didn't move away. She didn't do any of those things. None of that was discussed by the judge. Can I ask a question about relief, sir? Your brief concludes that you want the ALJ's decision to be reversed. That is to say the client to be reinstated. I understood from what you just said now and what you said earlier that you may be making a subsidiary lesser relief argument in the form of a vacate and a remand to require the ALJ's decision  reversed. I think that would be appropriate if it's not reversed. I think that's certainly a very fair way to resolve this. And what would our rationale be? That a basic investigator who looked at this bruise first in time, week after, concluded, trained professional, said Ms. Smith,   very serious case. I think that would be a reason based on the factual record. I'm looking for an opinion. Do I say as a general proposition credibility decisions are well nigh irrefragable but there must be some assurance to the appellate court that the judge has properly investigated or reviewed and discussed all of the possible facts that may undermine? Is that what you want? I think so. Well, isn't that a slippery slope? With all deference to your good advocacy and whatnot, I wonder if that isn't opening up a slippery slope for future cases from the board where someone says, well, there's a little aspect here, there's always a little bit of confusion in the record to say, well, the administrative judge didn't dot the I and cross the T, so you've got to vacate where it may be. It's always a concern, Judge Clevenger, but I think that I look at it as a slippery slope the other way. I mean, the slippery slope could be basically as we put out in our brief, this raised standard of something happened. As the judge said, something happened. This would be a different case. Your case would be much stronger if the only evidence in here was the dialogue sort of between Lyle and Porter, that all the people who supposedly heard about them take out all the so-called background noise. If we didn't have any of that evidence and we simply had the question of whether or not this could have been done with a left hand yes or no, you would have a different case. I mean, I would say it's a part of the case, but it's not the crux of the case. That's why I was asking the government council whether there was any cross-fertilization of the testimony from the other people bearing down on how the cookie    have this story of an M.A.J. who goes ahead and uses all the facts or uses the most important facts, and came out this way. All right. That's how the cookie crumbles and that's it. That's not how the moon is made out of green cheese. When you have something that is so against the probability of the thing happening the way that it did, there has to be a precedent from somewhere that says judge, we respect you, we don't care          and use the facts to make a decision about it. We don't care about the facts that we  care about.